IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JUSTIN MICHAEL DAVENPORT,    )
S07433,                      )
                             )
                Plaintiff,   )
                             )
vs.                          )    Case No. 25-cv-1822-DWD
                             )
JOHN BARWICK,                )
LATOYA HUGHES,               )
PAIGE LONG,                  )
NURSE CAROL,                 )
CHRISTINE BROWN,             )
ILLINOIS DEPT. OF CORR.,     )
                             )
                Defendants.  )

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Justin Michael Davenport, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Pinckneyville Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. Plaintiff's complaint was dismissed for failure to state a claim, and his amended complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual

allegations of the *pro se* complaint are to be liberally construed.  *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### THE AMENDED COMPLAINT

Plaintiff alleges that on April 14, 2025, he experienced a seizure sometime before breakfast while in his cell.  He alleges that he did not have a cellmate, his cell was in the back of the wing, and the cells are not equipped with emergency call buttons.  When he saw Defendant Nurse Carol during medication rounds, she commented that he had a bump on his head, and she suggested that he sign up for sick call and attempt to alert staff if he felt another seizure coming on.  On May 9, 2025, Plaintiff wrote an emergency grievance about the lack of emergency call buttons and submitted it directly to Defendant Barwick, the warden.  He complains that Barwick deemed it a non-emergency without investigating.  He reports that since the original seizure, he has experienced many seizures.  On May 19, 2025, Plaintiff's seizure medication dose was increased.  On May 23, 2025, he wrote a letter to Defendants Barwick and Brown asking to be placed in an ADA cell or in healthcare so that he could secure help if he had more seizures.  Barwick never responded, and he alleges Brown denied his request.  Plaintiff experienced four additional seizures in June and July, so he wrote Defendant Brown another letter complaining that he was not being seen by healthcare staff when he placed sick call requests about his seizures, but he got no response from Brown.

Plaintiff faults Defendants Long and Hughes for denying him any relief via their review of his grievance at the Administrative Review Board (ARB) level.  He also faults individuals not named in the case caption for their handling of grievances.  His seizure

medication was increased two weeks prior to filing his complaint, but he has not been moved to a new cell and does not believe he will be moved before his release in late March of 2026. He alleges that when he has seizures his cellmate has tried to call out for help to no avail.

At the end of the pleading, Plaintiff lists defendants one by one and makes discrete claims against them. He faults Barwick and Brown for denying his requests and grievances related to seizures, and he faults Hughes for reading and reviewing his grievance without offering help or mandating emergency call buttons in the cells. He faults Nurse Carol for failing to follow seizure protocol, which would have required a 24-hour period of observation. He faults Defendant Long for failing to use her authority in the grievance process to help him. Finally, he faults the Illinois Department of Corrections. In support of the complaint, Plaintiff included affidavits from his cellmate about his recurrent seizures and the inability to get staff's attention for assistance.

Based on the allegations in the Amended Complaint the Court designates the following counts:

**Claim 1:**      **Eighth Amendment deliberate indifference claim against Defendant Nurse Carol;**

**Claim 2:**      **Eighth Amendment deliberate indifference claim against Defendants Barwick, Brown, Hughes, and Long, who allegedly reviewed Plaintiff's grievances and correspondence but did not offer any assistance;**

**Claim 3:**      **Eighth Amendment deliberate indifference claim against Defendant Brown for her handling of Plaintiff's correspondence about his repeated seizures.**

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

### DISCUSSION

As a preliminary matter, Plaintiff named the Illinois Department of Corrections as a defendant in his amended complaint, but the Department itself is not an entity subject to suit under § 1983, so this defendant will be dismissed. *See e.g., Smith v. Knox County Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012) (the jail itself was not a suable entity).

Turning to Claim 1, an Eighth Amendment claim arising from the denial of medical care consists of an objective and a subjective component. *Berry v. Peterman*, 604 F.3d 435, 439–40 (7th Cir. 2010). A plaintiff must show that he suffered from a serious medical condition (i.e., an objective standard) and also show that each defendant responded with deliberate indifference (i.e., a subjective standard). *Id.* To satisfy the subjective component, a prisoner must demonstrate that an official knew of and disregarded an excessive risk to inmate health. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Neither medical malpractice, nor mere disagreement with a doctor's medical judgment will amount to deliberate indifference. *Id.* Additionally, an inmate is not entitled to demand specific care, and a medical professional may choose from a range of

acceptable courses of care. *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019).

Plaintiff faults Defendant Carol for deliberate indifference, but he describes a very limited interaction with Carol. Specifically, he saw Carol while she was performing medication rounds in the cellhouse and he reported his seizure. He indicates that she verbally acknowledged a bump on his head, but he does not indicate that he reported any acute medical distress, nor does he allege that Carol could observe any present condition requiring treatment. Plaintiff complains that all Carol did was tell him to place a sick call request and try to alert staff if he believed a seizure was imminent. It is not apparent what about Carol's response might constitute deliberate indifference. Plaintiff did not have an acute medical need at the time she saw him, and she advised him how to seek follow-up care. This series of events simply does not amount to deliberate indifference.

Plaintiff again faults Defendants Barwick, Hughes, and Long for their handling of grievances related to his seizures. As the Court previously explained, the mere role in processing a grievance, without any participation in the underlying issue, is not sufficient to state a claim. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) (the alleged mishandling of a grievance by those who did not cause or participate in the underlying conduct states no claim). In some instances, inmates are allowed to proceed against prison officials on the premise that they did not adequately investigate a serious issue identified in a grievance, but here, Plaintiff's allegations do not meet this standard yet. *See e.g.*, *Perez v. Fenoglio*, 792 F.3d 768, 781-82 (7th Cir. 2015) (an inmate's highly detailed

correspondence to prison administrators may form the basis for deliberate indifference liability if the administrators turn a blind eye or fail to exercise their authority to investigate).   Plaintiff still has not described the contents of his grievances or correspondence well enough for the Court to assess if he has a valid claim that a prison official turned a blind eye to his situation.

For example, he faults Barwick for deeming a May 2025 grievance a non-emergency, but he does not indicate what he wrote in the grievance, such as what sort of injuries or concerns he raised or what sort of relief he sought.   He goes on to fault Defendants Long and Hughes for stamping or signing off on his grievances, but again, does very little to explain what the grievance(s) said about his medical condition or living situation, or what sort of relief he sought.   In addition to Barwick, Long, and Hughes, who are all named in the case caption, Plaintiff also faulted Counselor Lively, and Administrative Review Board member Aponte for denying grievances, but these individuals were not properly named as defendants in the case caption,[1] so these factual allegations do not form the basis for a valid claim.

In addition to the grievances, Plaintiff claims he sent a letter in May of 2025 to Defendants Barwick and Healthcare Administrator Christine Brown, asking to be moved to an ADA cell or a healthcare cell so that if he had a seizure it would be observable.   A letter writing campaign is generally not sufficient to establish personal liability against high level prison administrators under § 1983.   *See e.g.*, *Burks v. Raemisch*, 555 F.3d 592,

---

[1] Federal Rule of Civil Procedure 10(a) states that the caption and title of the complaint must name all parties.

595 (7th Cir. 2009) (writing letters to high level government officials is not sufficient to attribute personal liability to them under § 1983 because bureaucracies divide responsibilities, and high level staff can relegate things like the provision of good medical care to medical staff). Inmates cannot demand specific care or a specific living situation. In the complaint, Plaintiff describes the letter as being written just four days after he was seen by a nurse practitioner about his recurrent seizures. The nurse practitioner increased his dose of seizure medication at that appointment. The letter, sent just days after Plaintiff was seen by a medical professional, and before he experienced any additional seizures, is not sufficient to demonstrate that Warden Barwick exhibited deliberate indifference. Barwick, as Warden, is allowed to delegate the handling of issues like this to medical staff absent indication that absolutely nothing was being done and serious harm was likely. It appears that the letter was a demand for specific care, rather than a complaint that nothing was being done. Accordingly, neither the letter nor the grievances substantiate a deliberate indifference claim against Hughes, Long, Barwick, or any of the other individuals described but not name in the case caption. Claim 2 will be dismissed as insufficiently pled.

By contrast, Defendant Brown was allegedly the healthcare unit administrator at the time of the May 2025 letter and Plaintiff alleges that rather than ignoring the letter she denied his request to move cells. In addition to the May letter, Plaintiff alleges that he had three additional seizures in June and July of 2025, at which point he again wrote Brown for help. He claims he told Brown that health care staff were not responding to his sick call requests about recurrent seizures, but she did not respond. He alleges he had

additional seizures in late July and August of 2025.  The combined impact of the May 2025 and July 2025 letters to Brown, and Plaintiff's allegation that he continued to have seizures with no ability to summon medical help, is sufficient at this basis to proceed on Claim 3 against Defendant Brown.

### FILING FEE

On October 9, 2025, the Court granted Plaintiff's Motion to Proceed In Forma Pauperis and assessed an initial partial filing fee of $165.69 based upon the trust fund statements for the previous six months.  (Doc. 7).  Plaintiff subsequently filed a new Motion for Leave to Proceed In Forma Pauperis (Doc. 8) wherein he alleged that his finances were artificially inflated by Social Security funds, which he was required to remit back to the Social Security Administration by a September 2024 letter that he attached to his Motion.  He explains that with those funds long since gone, he cannot afford the initial fee of $165.69.  To assess Plaintiff's current ability to pay, it directed Plaintiff to submit a new Trust Fund statement that spans June 2025-December of 2025.

Plaintiff has now submitted a new trust fund statement along with a third Motion to Proceed In Forma Pauperis (Doc. 12).  Using the figures in the new trust fund statement, Plaintiff's initial partial filing fee would be $49.91.  Although an inmate is not allowed to spend his trust fund down for the purpose of evading a filing fee, Plaintiff contends that he did not behave in this fashion and his balance instead dropped due to repayments he needed to make to the Social Security Administration.  The Court will GRANT Plaintiff's more recent Motions to Proceed IFP (Docs. 8, 12) and his new initial

partial filing fee shall be $49.91.  **Plaintiff must pay $49.91 within 30 days to proceed with this case.**

### Disposition

**IT IS HEREBY ORDERED THAT Claim 3** of the Amended Complaint (Doc. 13) survives against Defendant Christine Brown.  By contrast, **Claims 1 and 2** are insufficient to proceed against Defendants Barwick, Hughes, Long, and Nurse Carol.  The Clerk of Court shall **TERMINATE** Defendants Barwick, Hughes, Long, Nurse Carol, and the Illinois Department of Corrections.

The Clerk of Court is **DIRECTED** to prepare for Defendant Christine Brown: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the Amended Complaint (Doc. 13), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation

of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted.  See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than 14 days after a change of address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute.  FED. R. CIV. P. 41(b).

The Clerk of Court is **DIRECTED** to enter the standard HIPAA Order in this case because it will involve the exchange of medical records.

Plaintiff's Motion for an Extension of Time to Amend (Doc. 14) is **GRANTED** instanter and his amended complaint (Doc. 13) was considered timely filed.  Plaintiff's Motions for Leave to Proceed IFP (Docs. 8, 12) are **GRANTED** for the reasons explained

above, and his adjusted initial partial filing fee is $49.91.  **Plaintiff must pay the $49.91 within 30 days to proceed with this case.**

IT IS SO ORDERED.

Dated: March 9, 2026

*s/ David W. Dugan*
DAVID W. DUGAN
United States District Judge

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear.  As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.